**IN THE COURT OF APPEALS OF IOWA**

No. 20-1539
Filed March 3, 2021

**IN THE INTEREST OF C.B., K.R., T.R., and D.R.,**
**Minor Children,**

**MICHELLE HYNES, Guardian Ad Litem,**
Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.

A guardian ad litem appeals a permanency order granting the parents six additional months to work toward reunification. **AFFIRMED.**

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for appellants minor children.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Molly Vakulskas Joly of Vakulskas Law Firm P.C., Sioux City, for appellee mother.

Douglas L. Roehrich of Roehrich Law Office, LLC, Sioux City, for appellee father J.R.

Dean Fankhauser of Fankhauser, Farrens & Rachel, PLC, Sioux City, for appellee father C.B.

B.R., Sioux City, self-represented appellee father.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother of four children, born in 2011, 2012, 2014, and 2019, tested positive for THC on the birth of the youngest child. She also had a history of methamphetamine use, as did the father of the youngest child. The department of human services intervened. The district court removed the children from their care and adjudicated them in need of assistance.

In 2020, the mother filed a motion for increased visits, citing multiple negative drug tests. Within two weeks, and on the cusp of the COVID-19-related shut down in March 2020, the State filed a petition to terminate parental rights. The district court postponed consideration of the mother's motion until the date of the termination hearing. That hearing took place approximately six months after the mother filed her motion.

Following the hearing, the district court found "circumstances dictated by COVID[-19]" rendered the services offered the two parents inadequate" but, "[d]espite the lack of services," the parents "made progress." The court concluded "returning placement and care of the[] children to one of" the two "parents [was] premature" and granted them "an additional six months' time to work on reunification efforts with the children." The permanency order contained a list of requirements they were to meet.[1]

The children's attorney appealed.[2] She contends the State proved the grounds for termination on which it relied, termination was in the children's best

---

[1] The court terminated the parental rights of the two fathers of the oldest three children. They have not appealed.

[2] A stay of the order was not requested.

interests, and the court should not have granted the two parents additional time. The only issue addressed with respect to the mother and appealing father was the question of additional time, and that is the only issue we will discuss.

Iowa Code section 232.117(5) (2020), governing termination findings and disposition, states:

> If after a hearing the court does not order the termination of parental rights but finds that there is clear and convincing evidence that the child is a child in need of assistance, under section 232.2, subsection 6, due to the acts or omissions of one or both of the child's parents the court may adjudicate the child to be a child in need of assistance and *may enter an order in accordance with the provisions of section* 232.100, 232.101, 232.102, or *232.104.*

(Emphasis added.) Iowa Code section 232.104(2)(b) states:

> After a permanency hearing the court shall do one of the following:
> . . . .
> b. Enter an order pursuant to section 232.102[3] to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

The children's attorney argues "[i]t is highly unlikely that the children will be able to return to a parent's care at the end of six months." She cites the parents' inability (1) "to maintain any period of sobriety," (2) "to progress past the point of one supervised visit weekly," and (3) to sever "their dysfunctional relationship."

We begin by noting that the district court made the predicate findings for a grant of additional time. *See In re L.H.*, 949 N.W.2d 268, 272 (Iowa Ct. App. 2020)

---

[3] Section 232.102 sets forth various options for placement following a dispositional hearing.

(setting forth pertinent statutory prerequisites); *In re B.F.*, No. 15-1969, 2016 WL 363774, at *1 (Iowa Ct. App. Jan. 27, 2016) (affirming the grant of a six-month extension "even though the children had been out of the mother's care for more than two years," after stating, "The court made the required findings and set forth in detail the specific factors, conditions, and behavioral changes necessary for each parent to resume custody at the end of the six-month period"); *In re R.M.*, No. 14-1863, 2015 WL 791830 at *4 (Iowa Ct. App. Feb. 25, 2015) ("[T]he permanency order meets the specificity requirement in the statute."). We turn to the record, reviewing it de novo.[4]

There is no question the parents struggled with sobriety. The mother testified her last "clean date" was approximately two-and-one-half months before the termination hearing. That said, she made concerted efforts to address her addiction, completing an inpatient substance-abuse program and transitioning to a half-way house, where she remained at the time of the termination hearing. She tested negative for all substances two weeks before the termination hearing and expected to be discharged from the facility less than three weeks after the termination hearing. We agree with the district court that she made progress, albeit belatedly.

---

[4] The supreme court clarified that our review of generally all aspects of a termination proceeding is de novo. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *cf. In re R.H.*, No. 16-0108, 2016 WL 1129306, at *1 n.2 (Iowa Ct. App. Mar. 23, 2016) (finding it unnecessary to decide "whether a decision to grant a six-month extension under Iowa Code section 232.104(2)(b) is subject only to de novo review or whether the previously applied abuse-of-discretion standard also comes into play"). *But cf. In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020) (noting rulings on continuance motions in termination proceedings are reviewed for discretionary abuse).

The father's progress was more limited. While he, too, completed inpatient treatment approximately three weeks before the termination hearing and tested negative for all substances two weeks before the termination hearing, he tested positive for marijuana within a week of the termination hearing. At the same time, he recognized and outlined the steps he needed to take to move toward reunification.

The parents' mixed success in maintaining sobriety might have warranted termination of their parental rights. But we cannot say the district court acted inappropriately in granting them an additional six months to work on that goal. *See In re V.L.*, No. 13-0481, 2013 WL 3291871, at *4 (Iowa Ct. App. June 26, 2013) (noting "cautious[] agree[ment] with the juvenile court's conclusion that [the mother's] recent progress, even if belated and somewhat limited, supports and warrants a six-month 'extension' pursuant to section 232.104(2)(b)" and "conclud[ing] that for judicial economy any decision by the juvenile court concerning whether a petition to terminate [the father's] parental rights should be filed [could] await developments that occur during the 'extension' granted by the juvenile court").

The same holds true for the parents' failure to move beyond supervised visits. As a practical matter, they could not do so until they addressed their addictions. The department case manager testified the mother was actively using drugs following the COVID-19-pandemic shut down in March 2020, and the mother conceded it would have been inappropriate to increase her visits while she was actively using. As for her request for increased in-person visits, she agreed she could not have in-person visits at the inpatient substance-abuse facility she

entered in June 2020. And, as the district court found, the COVID-19 pandemic limited the parents' ability to have in-person contact on either a supervised or unsupervised basis. Even so, the department afforded the mother one in-person visit before she began treatment at the inpatient facility and off-site in-person visits after she transitioned to the half-way house, as well as contact with the children through video chats. The department reported no parenting or safety concerns at the visits. As for the father, he engaged in virtual visits with his child and had an in-person visit after leaving the inpatient facility.

We are not convinced the department failed to satisfy its reasonable-efforts mandate in declining to increase the number of parental visits. *See In re C.G.*, No. 20-1102, 2020 WL 7021684, at *2 (Iowa Ct. App. Nov. 30, 2020) (concluding the switch from in-person to virtual visits "was certainly reasonable" in light of "the COVID-19 pandemic"). But we recognize the mother's motion for increased visits, filed before the pandemic and on the heels of negative drug tests, was not addressed for several months. Under these circumstances, we cannot fault the district court for affording the parents additional time to facilitate reunification, despite the mother's concession that she consumed alcohol before the motion was filed. *Cf. R.M.*, 2015 WL 791830, at *4 (approving six-month extension where the department delayed implementation of visitation and stating "we do not view [the father's] alcohol use as sufficient cause to deny the six-month extension").

We are left with the parents' dysfunctional relationship, which the children's attorney argues impeded the parents' ability to remain sober. The district court admonished the parents that the additional time being granted was not "an opportunity for the two of you to resume your relationship and be together at this

point" but was "an opportunity for to you work on yourselves and to work on reunification with your child . . . and with your children." The court told them, "I know that you both found your way into inpatient treatment. Both of you have graduated successfully. And now is the opportunity for you to show that you can live sober lives, live lives of recovery." We trust the parents heeded the admonishment.

We affirm the district court's grant of six additional months to work toward reunification. *See R.H.*, 2016 WL 1129306, at *1 n.2 (affirming the district court's "lengthy, fact-intensive, and thorough ruling" granting a father six additional months to work toward reunification); *In re C.B.*, No. 09-0782, 2009 WL 2170358, at *1 (Iowa Ct. App. July 22, 2009) (finding the grant of additional time was "most appropriate and supported by clear and convincing evidence").

**AFFIRMED.**